DANO v. M. O. and R. R. R. R. Co.

RAILROADS—*Laborer's lien on, act of July 23d, 1868, construed.*—The lien given a laborer, by the act *approved July 23d,* 1868, is *personal* and cannot be assigned or transferred; it must arise out of a contract either express or implied between the parties; the party, seeking to enforce a lien of this character, must bring himself wholly and. technically within the statute granting the relief, and there must be such an interest, in the estate subject to the lien, as can, upon process, be sold, transferred and conveyed to the purchaser thereof.

2.  The first nine sections of the act have reference only to movable property and the labor performed thereon, and the word "*all,*" as used in the act, is not to be construed literally, as giving to every laborer a lien for his labor..

3.  The remedy afforded, by the act, is summary and should be strictly construed, and the *tenth section* of the act is not to be so extended or construed as to give to the laborer employed in ditching, building levees or railroad lines,. a lien upon the real estate for his labor, where the labor was done under a contract from the State, but only when the contract was with the owner of the lands upon which the work was done.

*Requisites of complaint.*—In an action to enforce a laborer's lien, the complaint should disclose the property and the nature of the estate held by the defendant, and upon which the lien is claimed.

APPEAL FROM CHICOT CIRCUIT COURT.

HON. HENRY B. MORSE, *Circuit Judge.*

*Garland & Nash,* for Appellant.

The law giving a laborer's lien is broad and comprehensive. It speaks of *all* laborers, doing *any* work under any kind of contract at all, having a lien on the production of their labor. See *Acts of* 1868–9, *p.* 224, *Sec.* 1, (*act of July* 23, 1868).

If any person can be called a *laborer* he who does work on a railroad can. The difficulty of identifying the product of his labor is nothing in this question. If he cannot identify it then he cannot have a lien. But that is certain in law which can be made certain. *Broomis' Legal Maxims,* 556.

Such are in giving mortgages upon things not *in esse*—crops. not grown—lumber not sawed, etc., etc., when they are produced and identified then the lien attaches. *Pennock vs. Car,*

23, *How.* (*U. S.*) 117; *McClure vs. McDearmon,* 26 *Ark.,* 66.

*Montgomery & Warwick and T. D. W. Yonley,* for Appellee.

We submit the judgment should be affirmed :

*First.* That mechanics' and laborers' liens are purely statutory, and he, who does not come within the strict provisions of the statute, has no lien. *Houck on Liens.*

*Second.* To entitle a person to a laborer's lien, under. the statute, he must show that he is a *laborer* within the meaning of the statute ; the design of the statute is to protect the ordinary laborers of the country, and although a person may have performed labor, such as clerk, agent and the like, he does not come within the purview of the statute.

*Third.* The lien of a laborer is personal and cannot be assigned. It is contrary to public policy that liens of this kind should be enforced against any public corporation.

McClure, C. J.—Duane M. Dano filed a petition, in the Chicot Circuit Court, against the appellee, praying for a laborer's lien upon certain grading or road bed. At the April term of said court, the appellee moved to strike from said petition the names of several parties who sought to become co-plaintiffs in the prosecution of the suit; said motion was sustained by the court. The appellee, also, filed a general demurrer to said petition, which the court also sustained, and the plaintiff's petition was ordered dismissed; to which said rulings, the plaintiff excepted and appealed to this court.

The appellant assigns for error the following causes :

*First.* That the court erred in striking from the record the names of the parties plaintiffs, except Dano.

*Second.* In sustaining the demurrer to plaintiff's petition, and in dismissing the same.

For the purposes of this decision, we deem it wholly unnecessary to dwell upon the first assignment of error, for the appellant can take no exceptions, as his cause was properly before the court for adjudication, and the record fully shows its action thereon.

The second assignment, however, cannot be so summarily disposed of, involving as it does, a review, to some extent, of the law of liens, and the application of the same to a statute of our State, not heretofore considered by this court.

No branch of the law, probably, has been so thoroughly changed by legislation as that governing liens. In most of the States, and no doubt wisely, statutes have been passed granting special rights and privileges to certain members of society, such as mechanics, laborers and material men, changing the well defined rules of the common law, evidently based upon equitable principles and commercial necessity. Through all these statutes, however, so far as the courts have construed them, the law seems to be well established that there must, of necessity, be a contract, either express or implied, between the parties, and that the lien is *personal* and cannot be assigned or transferred; that the party seeking to enforce a lien, of this character, must bring himself wholly and technically within the statute granting the relief, and that there must be such an interest in the estate subject to the lien, as can, upon process, be sold, transferred and conveyed to the purchaser thereof.

The case, at bar, was brought under the provisions of " an act giving all laborers a lien upon the production of their labor until the same is paid," approved July 23d, 1868. The first section of the act, the one creating the lien, reads as follows :

" That all laborers, who shall perform work and labor for any person under a written or verbal contract, if unpaid for the same, shall have an absolute lien on the production of their labor for such work and labor."

The language of this section is broad and comprehensive, and defines, concisely, the nature and character of the lien and establishes the right of the *laborer* to resort to it. It says: *all* laborers doing any work, under written or verbal contract, shall be entitled to a lien *on the production of their labor*.

In what sense did the Legislature use the word " laborers"?

is one question which presents itself to our mind. Webster says, " a laborer is one who labors in a toilsome occupation—a man who does work that requires little skill, as distinguished from an *artisan.*" We will assume, inasmuch as there was, prior to the passage of the act of July 23d, 1868, a law protecting that class of laborers coming under the head of *artisans,* that the word " laborer," as used, in the statute now under consideration, by the Legislature, was intended to be understood according to its common acceptation, and as defined by Webster. Viewed in this light, the next question arising is, what is the meaning of the words, " shall have an absolute lien on the production of their labor." In defining the word " production," Webster says it has reference to "that which is produced or made; product; fruit of labor; as, the *productions* of the earth, comprehending all vegetables and fruits; the *productions* of intellect, or genius, as poems and prose compositions; the productions of art, as manufactures of every kind."

It is clear to our minds that the first nine sections of the act, now under consideration, have reference solely to moveable property, and the labor performed thereon; thus, ordinary farm hands, employed in the cultivation of a crop, would have a lien on the crop produced by their labor. But it may well be doubted whether the laborer, who built fires whilst a man of genius wrote a poem, would have a lien either upon the rythm or the manuscript, although he may have contributed to the comfort and convenience of the poet. This word " all," as it is used in this act, is not to be construed literally as giving to every laborer a lien for his labor. The clerk of a merchant or banker, in one sense of the word, is a laborer, and so are ordinary house-servants; but they do not come within the purview of this act, because they produce nothing to which a lien could attach. The appellant was a laborer on a railroad, and, as such, is not, and does not come within the class of laborers described in the law, as being entitled to " a lien on the *production* of their labor." If he is

entitled to a lien under the law, that right must be drawn from that portion of the act not included in the first nine sections.

The tenth section of the act reads as follows: "When any real estate is to be sold under a lien for labor, such as ditching, building levees, etc., the justice of the peace shall file a copy of the judgment rendered in the county clerk's office immediately, and the county clerk shall place it in his judgment docket, and cause the sheriff to sell such real estate, having given thirty days' notice of the same, in the way the same is herein provided." This language looks like it was intended by the legislature that real estate might be sold for the payment of a laborer's lien, given by the statute now under consideration. The language used in the section just quoted, imports that it was the intention of the legislature to give to persons employed to do ditching, or employed in the building of levees, a lien on real estate for their labor. This is a wise and · salutary provision, but must not be extended beyond the evident intention of the legislature. This language ·was not certainly intended to be so extended as to allow a laborer, employed in the building of a levee, under a contract from the State, to sell the real estate, of the person on whose lands the levee was situate, to secure a payment of his wages, in the event his employer failed or refused to pay him; nor can this act be so distorted as to allow a laborer to sell the levee, although he may have contributed towards its erection. But where the owner of the real estate made a contract for the ditching of his plantation, or for the erection of a levee, and refused to pay for it, no doubt the lien would attach. A railroad is neither a *drain* or a *levee*, in the common acceptation of the word. There is nothing in this act which intimates that the legislature intended it to be extended to railroads, unless it is in the abbreviation " etc.," which is used after the words " ditching " and " building levees." The abbreviation " etc." is sometimes used in pleadings to avoid repetitions, and when so used, usually relates to things unnecessary to be stated; but we have never before heard of it

being incorporated in a statute, and are, therefore, at some loss to determine just exactly what the legislature intended by its use.

The remedy afforded by this act is summary in its character and, to some extent, remedial, and at the same time contrary to the course of the common law. Remedial statutes should be construed liberally; not so, however, with summary statutes. This being true, we do not feel disposed to so construe the abbreviation " etc." as to mean and include railroads. But whether this view be correct or not, let us see if the appellant has brought himself within the statute, even if a railroad was included within the abbreviation " etc.," for this is of more importance than the determination of the other question, which is not necessarily presented in this case. Section five of the act provides, in substance, that the person having a lien shall file a statement of the amount due; the kind of service done, and for whom rendered, and a list of the land, property, crop, or other production of his labor, charged. The allegation of the complaint is for " work and labor, care and diligence of plaintiff, rendered said defendant in and about the construction of said road." The petition, or complaint, as will be seen, does not set forth a description of any land or property to which the lien had or might attach ; nor does it disclose whether or not the appellee had any land or property in the road or any part of it. Had the court below rendered judgment in favor of the petitioner, the court would have been unable, in the absence of a description of the property, to have directed what property to sell. The action, provided by this law, partakes of a proceeding *in rem*, and execution would have to go against the property which the laborer was entitled to à lien upon. In attachment, the execution follows the property attached, and so it is under the laborers' lien law. It is also the duty of the plaintiff, in actions of this character, to disclose, not only the property against which he has a lien, but he must also disclose the nature of the estate held by the defendant. So far

as the court below was concerned, it had no means of ascertaining whether the estate, on which the labor was performed, was an estate in fee, an estate in trust, a lease-hold, or an easement.   The complaint shows nothing of this kind.   Without this knowledge it would be very difficult for the court to make the proper orders in a case.   Without the proper knowedge it might order a sale of the fee, where the defendant had a lease-hold, or where the defendant had a mere easement.

The complaint of the appellant discloses the fact that a large part of his claim is made up of items, orders and charges of other parties assigned and transferred to him. Under the most liberal construction of the statute, the appellant is not entitled to the aid of this act to aid him in the collection of claims purchased or transferred to him by other laborers.   The statute does not provide for it, and the whole theory of the law is against it.   The remedy, provided by this act, is *personal*, and, as we have before stated, cannot be transferred.

Finding no error in the record, the judgment of the court below is affirmed.


GREGG, J., dissenting, says:—The appellant failed to describe his services; to show what labor he had done; he failed to describe the property against which he was attempting to enforce a lien, and he failed to charge that the appellee was the owner of the property against which he was proceeding, etc., and the demurrer should have been sustained.

But we are not prepared to concur in all the reasoning of the court.

The first section of the law referred to.—Act of July, 23d, 1868—declares that all laborers shall have an absolute lien on the production of their labor, etc.   Section five, in which the manner of commencing suit is prescribed, directs how lands and other property shall be listed, preparatory to sale, etc. The tenth section provides for a sale when judgment is obtained, and declares that when real estate is to be sold under

a lien for labor, such as ditching, building levees, etc., a copy of the judgment shall be filed in the county clerk's office, etc. Section fifteen provides that, in selling buildings, a reasonable amount of land, not exceeding two acres, will be sold with them, etc. Section sixteen prescribes that the officer making sale shall make deed, etc., and section twenty prescribes that no real estate shall be exempt from sale under an execution on a laborer's lien.

We think the lien upon real estate does not depend upon the language in section ten. That section in no way declares upon what kind of property the lien may attach; it prescribes the mode of sale, and alludes to ditching and levees as illustrations of the kind of work for which a lien attaches to real estate; it says when real estate is to be sold under a lien for labor, such as ditching, etc.; and whether or not railroads come within the provisions of the lien, does not depend upon the tenth section, or what is embraced in it, etc.

The act is general in its terms; it does not specifically point out either personal or real property, but attaches the lien to all property, and then prescribes how personal property and real property shall be sold; what quantity in certain cases shall be sold; that none shall be exempt from execution, etc. And we have no doubt but it was the intention of the Legislature to embrace all real estate whereon its owner may have valuable fixtures erected, and, by such labor, rendering the lands more valuable.

We think it immaterial whether the labor was in ditching, building a stone wall, or erecting other improvements, such as an owner might wish to attach to his lands. And, under our railroad charters, the companies do not erect their lines of road upon a mere easement—a mere right to pass over the lands of another. But they hold such title in the realty as is subject to mortgage and sale; subject to transfer by deed, etc. And if a proper case should arise, between proper parties, I see no reason why a lien might not be enforced against a railroad company as well as against others holding property.