356 So.2d 359 (1978)
Iris Jean SMITH and Charles Arthur Wright, On Behalf of Themselves and Other Employees of Atlantic Boat Builder Company and Others Similarly Situated, Appellants,
v.
ATLANTIC BOAT BUILDER COMPANY, a Florida Corporation, Atlantic Bank of St. Augustine, a Florida Banking Corporation and Ford Motor Credit Company, a Corporation, Appellees.
No. HH-298.
District Court of Appeal of Florida, First District.
March 13, 1978.
Rehearing Denied April 5, 1978.
*360 Geoffry B. Dobson of Meredith & Dobson, St. Augustine, for appellants.
Edward L. Kelly of Ulmer, Murchinson, Ashby & Ball, Jacksonville, for appellees.
*361 BOYER, Judge.
By interlocutory appeal appellants seek review of an order of the trial court denying to them class action status and holding certain security agreements in favor of the Atlantic Bank of St. Augustine to be superior liens to those claimed by appellants under Chapter 713, Florida Statutes.
Although the record before us is silent as to how it was accomplished, the name of Charles Arthur Wright does not appear in the pleadings, even in the style, subsequent to the amended complaint. He was apparently dropped as a party plaintiff, but no order to that effect appears in the record. However, since no issue as to his status is presented on appeal we will seek no further. We allude to his absence only for clarification of the balance of this opinion.
Cognizant as we are that there is not pending before us any motion to dismiss the interlocutory appeal, we are nevertheless ever conscious of our jurisdiction and anxious that we not attempt to function in excess of it. The order here sought to be reviewed provides, inter alia:
"The case of Iris Jean Smith, on behalf of herself and other employees of Atlantic Boat Builder Company and others similarly situated, * * * cannot be maintained as a class action and the complaint be and the same is hereby dismissed without prejudice to allow plaintiff, Iris Jean Smith, to pursue her claim of lien individually, if she so desires. * * *"
We held in Cordell v. World Insurance Company, 352 So.2d 108 (Fla. 1st DCA 1977), that an order virtually identical to the one here appealed finally determined the class action status and was, therefore, although it permitted the individual plaintiffs to amend and proceed, nevertheless a final order from whence a plenary appeal would lie. (See also Eisen v. Carlisle & Jacquelin, 2 Cir., 370 F.2d 119 (1966), cert. den., 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967) and Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). However, we held that such was not fatal to our jurisdiction but instead treated the notice of interlocutory appeal as a notice of full or plenary appeal. We will give the same treatment to the case sub judice and inasmuch as the case has been fully briefed and orally argued, we will resolve the issues presented, treating the record and appendices which have been filed as a record on appeal.
The amended complaint by which appellants sought to assert the aborted class action named as party defendant Atlantic Boat Builder Company, a Florida corporation, and alleged that the plaintiffs and all other hourly employees of the defendant, constituting a class so numerous as to make it impracticable to bring them before the court, and all similarly situated, were employed by the defendant to perform labor on various vessels or water crafts being constructed by defendant at its plant in St. Augustine, Florida; that on August 19, 1977 there was due and owing to plaintiff Iris Jean Smith the sum of $284.00 and to plaintiff Charles Arthur Wright the sum of $320.00 and to each of the hourly employees various amounts for labor performed in the construction of various vessels or water crafts then in possession of the defendant; that defendant had failed and refused to pay the amounts due the plaintiffs and others similarly situated; that there are approximately 100 hourly employees sought to be included in the class; that defendant had in its possession five vessels in various stages of completion, being Hull Numbers 19, 20, 21, 22 and 23; that all hourly employees have performed work on one or more of said hulls; and that all the plaintiffs claimed a lien pursuant to F.S. 713.60 against said vessels.
The Atlantic Bank of St. Augustine immediately thereafter commenced an action against Atlantic Boat Builder Company seeking to enforce certain security agreements held by the Bank.
An order was then entered, reciting that it was in accordance with a stipulation of the parties, permitting the Bank to intervene in the class action suit and permitting the plaintiffs in that suit to intervene in the Bank's action and consolidating the cases. Each of the intervenors then answered, *362 alleging, inter alia, various affirmative defenses. Thereafter a hearing was held (recited in the trial court's order to have been in accordance with an agreement of the parties) following which was entered the order here appealed.
We will first consider the propriety of the denial of class action status. Appellants urge that the Bank, upon whose motion the order was entered, was without standing, as an intervenor, to challenge the plaintiffs' class action status, citing Krouse v. Palmer, 131 Fla. 444, 179 So. 762 (1938). We note, however, that Fla.R.Civ.P. 1.230 while providing that intervention "shall be in subordination to, and in recognition of, the propriety of the main proceeding" concludes with the qualifying clause "unless otherwise ordered by the court in its discretion." Although the court's order did not specifically provide that the intervention of the Bank would not be in subordination to the main proceeding, the recitations in the order and its conclusion clearly indicate the court's purpose. In any event, since both parties to this appeal were allowed, by their own agreement, to intervene in the suit commenced by the other and the cases were consolidated, the case has been removed from the ambit of Rule 1.230, therefore we find there was no error in permitting the Bank to challenge the class action.
In Cordell v. World Insurance Company, Case No. GG-398 and GG-399, 355 So.2d 479, opinion filed February 24, 1978, we, citing various authorities, set forth the purpose, requisites and standards for class actions. No useful purpose will be achieved by repetition here, it being sufficient to observe that the authorities there cited and quoted are equally applicable sub judice.
Further on the subject of class actions, our sister court of the Fourth District in Imperial Towers Condominium, Inc. v. Brown, 338 So.2d 1081 (Fla. 4th DCA 1976) said:
"A class may also be defined in terms of the result sought, however.
`A class suit is maintainable where the subject of the action presents a question of common or general interest, and where all members of the class have a similar interest in obtaining the relief sought. The common or general interest must be in the object of the action, in the result sought to be accomplished in the proceedings, or in the question involved in the action. There must be a common right of recovery based on the same essential facts.' Port Royal, Inc. v. Conboy, 154 So.2d 734 (Fla.App. 1963)." (338 So.2d at page 1084; emphasis added by that court)
In the last cited case the class action was challenged on the grounds that: (1) the lack of identity, similarity or commonality of causes, issues and right to recovery among the alleged representatives and absent class members; (2) the lack of standing of the alleged class representatives to maintain this action on behalf of the absent class members; (3) the existence of disparate, divergent and conflicting circumstances, issues and defenses between defendants collectively as to the plaintiffs collectively and among the defendants severally and the plaintiffs severally; and (4) the absence of a single fact, or any single set of facts which would be decisive of any of the several claims of all the parties named. The trial court held the case not maintainable as a class action and later dismissed it. The District Court, recognizing the asserted defenses, reversed, observing: "These differences may permit subclasses to be designated for the purpose of determining damages".
We are of the view that the statement of the late Justice Glenn Terrell of the Supreme Court of Florida in Tenney v. City of Miami Beach, 152 Fla. 126, 11 So.2d 188 (Fla. 1942), quoted with approval in Cordell v. World Insurance Company, supra, is applicable and that the learned trial judge erred in dismissing appellants' suit as a class action.
We turn now to the even more vexing problem of lien priorities. Clearly the bank has liens perfected under security agreements in its favor. Equally clearly the appellants have alleged liens pursuant to *363 F.S. 713.60. The issue therefore is which lien has priority.
The trial judge, in the order here appealed recited and held:
"1. Atlantic Bank of St. Augustine, hereinafter called Bank, is the holder of four security agreements executed and delivered in September, 1976 and October, 1976, securing three promissory notes in the amounts of $130,000.00, $180,000.00 and $75,000.00 respectively. The financing statement filed with the Secretary of State and recorded with the Clerk of the Circuit Court of St. Johns County, Florida, in September, 1976 and covering the original goods which were the subject of the security agreements also cover the products into which the goods have been manufactured, processed or assembled. The security agreement marked exhibit "E", dated September 27, 1976, and attached to the complaint filed by Bank covered all inventory, raw materials, work in progress and materials to be used or consumed in the debtor's business. This security instrument covered after acquired property and secured payment of all indebtedness of every kind owing by the debtor to the secured party whether now existing or hereafter incurred, direct or indirect. The security agreement marked exhibit "F", dated October 27, 1976 and attached to the complaint filed by Bank covered the same goods and contained an after acquired property clause and the same provision regarding the indebtedness secured. Therefore the three promissory notes of $130,000.00, $180,000.00 and $75,000.00 were secured by exhibits "E" and "F".
"2. Atlantic Boat Builder Company, hereinafter called Boat Builder, owes $385,000.00 under said notes and the notes are in default.
"3. Hulls # 19 and # 20 owned by Boat Builder were constructed of materials and equipment owned by Boat Builder (and encumbered by Bank's security agreements (exhibits "E" and "F")) and constitute work in progress. The hulls have been in the possession of Boat Builder and are now in possession of the receiver.
"4. Section 679.204(4)(a) and (b) and section 679.109(a), Florida Statutes, provides for a lien upon after acquired property. Section 679.315, Florida Statutes, provides that if a security interest in goods is perfected and subsequently the goods become a part of a product or mass the security interest continues in the product or mass. Bank's financing statement covered the product as required by Section 679.315, Florida Statutes.
"5. A reading of Part II, Florida Statutes, Chapter 713, which includes Section 713.60 under which the Employees claim reveals that the chapter creates mechanic liens for a variety of labor, services performed and materials furnished. Liens for labor on or for vessels under Florida Statute 713.60, are not maritime liens, but are mechanics liens. Such liens are not governed by maritime law.
"6. The case of International Harvester Credit Corporation v. American National Bank of Jacksonville, 296 So.2d 32, (Fla. 1974), does not govern the disposition of the issue before the Court. In that case when the after acquired property came in to the debtor's possession it was encumbered by a purchase money security interest retained by the vendor of the property. The case before the Court does not involve a purchase money security interest. Bank's security interest attached to all inventory and raw materials prior to the creation of any liens under Section 713.60, Florida Statutes.
* * * * * *
"It is therefore,
"ORDERED
"1. The lien of Bank's security agreements marked exhibits `E' and `F' attached to the complaint filed by Employees and filed in evidence as part of Bank's composite exhibit no. 1, securing three promissory notes also a part of Bank's composite exhibit no. 1, evidencing unpaid debt in the amount of $385,000.00 plus interest, is superior and prior in dignity to the liens asserted by Employees *364 under Florida Statute, section 713.60. * * *"
F.S. 713.60 provides for a lien:
"In favor of any person performing for himself or others, any labor, or furnishing any materials or supplies for use in the construction of any vessel or watercraft; and in favor of any person performing for himself or others, any labor or service of any kind, on, to or for the use or benefit of a vessel or watercraft, including masters, mates and members of the crew and persons loading or unloading the vessel or putting in or taking out ballast; upon such vessel or watercraft, whether partially or completely constructed and whether launched or on land, her tackle, apparel and furniture."
Appellants urge that the statute under which they claim creates for them state-created maritime liens on hulls 19 and 20 which take priority over the bank's lien which is non-maritime. In so urging, they rely upon The Diane, 45 F. Supp. 510 (D.C.S. D.Fla., 1942) and Burdine v. Walden, 91 F.2d 321 (CA 5, 1937). While it is true that in those two cases the claimants were held to have state-created maritime liens cognizable in admiralty by virtue of F.S. 713.60, the liens there asserted were for masters' wages and were maritime in nature. It is well settled that a state-created lien for the building of a ship is not recognized in admiralty since a ship building contract is a contract made on land to be performed on land is not maritime in nature. (The J.E. Rumbell, 148 U.S. 1, 13 S.Ct. 498, 37 L.Ed. 345 (1893)). Accordingly, a state statute allowing a lien arising out of such a contract is not a maritime lien and cannot be enforced in admiralty. It therefore does not enjoy the maritime lien priority.
Appellants also seek haven in F.S. 679.9-310 which provides:
"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."
There is, though, no refuge there because the essential element in that statute is possession. Neither the appellants nor the bank have possession of the subject hulls so F.S. 679.310 has no applicability.
Appellants also argue that the bank is equitably estopped to claim priority because it was aware that Atlantic Boat Builder Company was in financial difficulties and yet the employees were allowed to continue working in anticipation that their wages would be secured as the value of the hulls were increased by their labors and for the further reason that an officer of the bank's holding company promised the president of the boat building company that the employees would be paid if the boat builder would consent to receivership. As appealing as the argument is, we cannot adopt it sub judice. First, it is not alleged, nor does the record reveal, that the bank had any authority to terminate the employees and it might well have subjected itself to liability had it intruded into the business of its debtor. Further, as to the promise by the officer of the holding company, though argued, the record reveals no such promise. There being no other allegation of actual misrepresentation, and no proof of misrepresentation, the case of Continental Casualty Company v. Associated Plastic, Inc., 347 So.2d 822 (Fla. 3rd DCA 1977) has no applicability.
The learned trial judge and both parties to this appeal treat the issue as being controlled by the Uniform Commercial Code adopted by the Florida legislature in 1965. However, neither cite us to any specific provision of that Code touching upon priorities as between laborers and other lien claimants. We note from independent research that F.S. 679.9-104 provides:
"This chapter does not apply:
* * * * * *
"(3) To a lien given by statute or other rule of law for services or materials except as provided in section 769.310 on priority of such liens; or

*365 "(4) To a transfer of a claim for wages, salary or other compensation of an employee; * * * "
As we have already observed, clearly F.S. 679.310 has no applicability here because of the possession requirement set forth in that statute. The absence of possession in either party does not render the statute negatively applicable. It simply has no application at all.
Although the trial judge in the order here appealed, and both parties in their briefs, cite and argue the applicability of International Harvester Credit Corporation v. American National Bank of Jacksonville, 296 So.2d 32 (Fla. 1974) (the trial judge and appellee taking the position that it is inapplicable and the appellant that it is applicable) neither have led us to any other authority.
No one can question the appellees' contention that the Supreme Court's decision in the International Harvester case is based upon clearly distinguishable facts. However, the rationale of that decision is persuasive. In that case the bank held a properly perfected security agreement encumbering the debtor's after-acquired property. Florida Truck and Tractor Company sold to the bank's debtor by retail installment contracts on two separate occasions various items of farm equipment, the latter contract being subsequently assigned to International Harvester. No financing statement was ever filed in the office of the Clerk of the Circuit Court relating to the first sale. A financing statement was filed by International Harvester some twenty-three days after the second transaction. Upon default of the debtor-purchaser an issue arose as to priorities. When the case reached this court (American National Bank v. International Harvester Credit Corporation, 269 So.2d 726 (Fla.App. 1st 1972)) Judge Rawls, dissenting in his typically colorful fashion, said:
"The law is an ass. [Charles Dickens, Oliver Twist, p. 399 (Oxford Press, 1961 ed.): `If the law supposes that said Mr. Bumble ... the law is a ass  an idiot.'] This aphorism is especially applicable to the instant facts for by detailing various provisions of the Uniform Commercial Code the majority has reached an illogical result.
* * * * * *
"By unduly emphasizing the formalistic language of the Uniform Commercial Code, the majority has determined that the subject machinery became the `after-acquired property' of Machek Farms free and clear of all vendor liens solely because the security instrument of the vendor was not properly recorded within 10 days of the transaction. My question is: How did the bank acquire as security for its debt property that the debtor did not even own? It is my view that Machek Farms was liable to Florida Truck and Tractor Company and International Harvester Credit Corporation for the sums remaining unpaid on the machinery. The bank's interest in this `after-acquired property' was limited to Machek's equity in same. To permit the bank under these facts to replevy the subject farm machinery from Florida Truck and Tractor Company and International Harvester Credit Corporation, in my opinion, constitutes legal larceny. * * *" (269 So.2d at pages 731-732)
The Supreme Court of Florida reversed this court, substantially relying upon the dissent of Judge Rawls, and said:
"* * * However, we differ with the district majority and agree with Acting Chief Justice [sic] Rawls that this priority security protection to the earlier creditor must be limited to the debtor's equity in the after-acquired property. This position is consistent with contractual constitutional requirements and equitable principles. The new seller's contract rights with his purchaser and any ownership retained in the property sold must be respected; moreover, it would be an invidious preference to the earlier creditor-bank without so much as a showing that there was a compelling public interest or purpose served by such arbitrary requirement of outright priority to the earlier *366 creditor in the total after-acquired property."
* * * * * *
"* * * It would be abhorrent to equity and justice that the earlier creditor should acquire the subsequent creditor's property or `interest' in this manner. Upon principles of equity and in the avoidance of unjust enrichment, the limitation to the debtor's equity in after-acquired property appears to be the better and more logical rule. We would accordingly agree with Acting Chief Judge Rawls in this respect."
* * * * * *
"Logical and traditional equitable reasons preclude a result which would allow the bank as mortgagee to subject the after-acquired farm equipment as its collateral, while not changing its position and giving no `new value' because of the later sale of equipment; consequently, the bank was not misled by the failure of the seller of the equipment to record his purchase money security.
"To give the prior creditor the seller's retained interest in such property simply because of such seller's failure to record and to permit the original creditor to replevin the sold equipment would be to give to such earlier creditor a windfall not favored by the code (see § 679.108 and U.C.C. Comment 19C F.S.A. 198) contrary to established principles. Compare County of Pinellas v. Clearwater Federal Savings & Loan Ass'n, 214 So.2d 525 (Fla. App.2d 1968).
"Our viewpoint regarding a limitation (to the buyer's equity) of the security of the earlier creditor, allows a just result to such creditor and yet is consistent with constitutional requirements as to the subsequent seller. Our position acknowledges, yet modifies, the view expressed by Judge Wigginton and that of the other jurisdictions cited in his opinion." (296 So.2d at pages 34 and 35)
That logic and reasoning is equally applicable sub judice. In the words of the Supreme Court of Oklahoma in Home Building & Loan Ass'n et al. v. White et al., 141 Okla. 240, 284 P. 889 (1930):
"* * * the underlying motive of the law was to prevent the inequity of one enjoying the handiwork of another without recompense. The law does not go beyond the constitutional guaranty to secure unto the laborer his right to the enjoyment of the fruits of his own industry, nor does it deprive another of his right of property likewise secured unto him." (284 P. at page 894)
And so it is in the case sub judice. Were it not for the labor of the employees of Atlantic Boat Builder Company there would be no hulls upon which the after-acquired property provision of the bank's lien could attach. The bank, of necessity, had to know at the time that it acquired its liens that the boat builder had employees who were performing labor and incorporating materials into the boats. Such was an essential element of the manufacturing process. Without those labors the boat building company would not have been in business and there would have been no need for the bank loans. The hulls and boats in the possession of the boat builder were subject to the liens of its employees who performed labor incident to the construction. Its ownership was therefore subject to the liens of its employees who performed labor incident to the construction. Its ownership was therefore subject to those liens. Its equity, then, was the hulls or boats or value thereof reduced by the laborers' liens. In accordance with the rationale of the International Harvester case, it is upon that equity, but only that equity, that the bank's lien on after-acquired property attached.
The same logic was applied by the Supreme Court of Florida in Exchange Nat. Bank of Tampa v. Kennedy, 109 Fla. 386, 147 So. 572 (1933). In that case Kennedy, an employee of an abstract plant, sought priority of a lien claimed under a statute similar to the one under which appellants claim sub judice. The bank held a chattel mortgage on the abstract plant. It was obtained during the time that Kennedy was engaged in working on the plant. Affirming a decree holding the employee's lien superior, the court said:

*367 "It is a matter of common knowledge of which all persons must take notice that an abstract plant is a thing which is under continuous construction. Its records must be built up from day to day as transfers and other documents are filed and recorded in the office of the clerk of the circuit court of the county to which the abstract plant applies. The construction of the plant, to make it of value and dependable, must go on from day to day. It is also a matter of common knowledge, and of which all must take notice, that clerical labor is required to perform that work incident to the continuing and continuous construction of such a plant.
"It follows, therefore, that one who takes a chattel mortgage on an abstract plant, takes such mortgage with notice that the plant is at all times in the course of construction, and that those who are employed in such construction acquire by the rendering of such services a lien for their labor upon such plant.
"Such a lien is within the purview of section 3505, Rev.Gen.St. section 5366, Comp.Gen.St. section 5366, Comp.Gen. Laws, and section 3517, Rev.Gen.St., section 5380, Comp.Gen.Laws.
"It therefore follows that Exchange National Bank took its mortgage, and notice of the lien in favor of the complainant.
"The mortgagee having taken the mortgage with constructive notice of the lien of the complainant, it was not necessary for her to file any notice of lien in the office of the clerk of the circuit court. In fact, there is no provision of the law which contemplates the filing of a notice of lien in such cases. The fact that the record shows that she did file a lien within three months after the performance of the last work is immaterial.
"The decree should be affirmed, and it is so ordered.
"Affirmed." (147 So. at page 573)
Flynn-Harris-Bullard Co. v. Johnson, 90 Fla. 654, 107 So. 358 (1925) appears at first blush to be contra. However a careful reading of that opinion reveals that the basis for the decision, and the feature which distinguishes it from Exchange Nat. Bank of Tampa v. Kennedy, supra, as well as the case sub judice, is the recitation by the court that:
"The services or labor for which the liens are claimed did not contribute to the construction or repair of property * * *." (107 So. at page 360).
The underlying purpose, we think, of F.S. 713.60 is to prevent the inequity of one enjoying the handiwork of another without recompense, securing unto the laborer his right to the enjoyment of the fruits of his own industry while not depriving another of his right of property likewise secured unto him. It would be an invidious preference to the creditor-bank, without so much as a showing that there is a compelling public interest or purpose served by such an arbitrary requirement should it be given an outright priority superior to the laborer's lien in the total after-acquired property and would be abhorrent to equity and justice and contrary to the equitable principles of the avoidance of unjust enrichment.
We make no determination here as to the extent of the class, nor do we determine whether employees of Atlantic Boat Builder Company who did not perform labors or services directly related to the constructing of the hulls upon which liens are sought are entitled to liens. Those issues have not been considered by the learned trial judge nor are they presented in the briefs. Addressing them at this juncture would be premature. We only hold that a class action may be maintained and that those members of the class entitled to liens pursuant to F.S. 713.60 are entitled to priority over the lien on after-acquired property as provided in the security agreements held by the Atlantic Bank of St. Augustine.
Whether the bank has any priority or equality of lien by virtue of any lien held by it upon any materials incorporated by the employees' labors into the hulls is not revealed by the evidence nor addressed in the briefs and therefore not decided here. (But see F.S. 679.315)
*368 REVERSED AND REMANDED for further proceedings consistent herewith.
McCORD, C.J., and MELVIN, J., concur.