John H. Pennock, J.
This motion is for an order striking the answer of the Ellenville National Bank and granting plaintiff summary judgment as prayed for in the complaint, on the ground that the said answer raises no triable issues of fact and summary judgment must he granted plaintiff as a matter of law.
The plaintiff is the trustee in bankruptcy of Galway Funding Corp. and has instituted this action to foreclose a certain first mortgage held by Galway Funding Corp. on real property owned by Sanray Floor Covering Corp., located in Woodridge, New York, and known as the “Woodridge Shopping Plaza”. The defendants are the owner of the said real property and other parties who may have or claim an interest therein which interest is subject and subordinate to the right of the plaintiff. Defendant, Ellenville National Bank, was made a party to the action because it filed a UOC-1 financing statement covering *781 certain items of air conditioning and heating equipment located at the said Woodridge Shopping Plaza. The defendant, Ellen-ville National Bank, interposed an answer to the complaint, denying the material allegations thereof and alleging, in substance, that as assignee of a certain security agreement dated January 6, 1967, covering the aforesaid items of air conditioning and heating equipment, its rights in and to the said air conditioning and heating equipment were superior to the rights of plaintiff in and to the same equipment.
The facts are as follows: On or about June 14, 1966 Sanray Floor Covering Corp. executed and delivered to Galway Funding Corp. its mortgage note in the principal sum of $225,000, with interest at the rate of 6% per annum, which note was due and payable April 14, 1967. As collateral security for the payment of said note, Sanray Floor Covering Corp. executed and delivered to Galway Funding Corp. a building construction loan mortgage dated the same day, which mortgage was recorded in the office of the Clerk of Sullivan County on June 20, 1966, and which covered the real property located in Woodridge, New York, known as the Woodridge ‘Shopping Plaza. In addition to covering the aforesaid real property, the said mortgage provided as follows: “all fixtures, chattels and articles of personal property now or hereafter attached to, delivered at for use, installed in or used in connection with said premises, including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other equipment and machinery, applieances, fittings, and fixtures of every kind in or used in the operation of the buildings standing on said premises, together with any and all replacements thereof and additions thereto.”
At the time Sanray Floor Covering Corp. executed the said mortgage and mortgage note, it executed a UCC-1 financing statement naming Galway Funding Corp. a secured party, which said financing statement covered ‘1 all fixtures, chattels, equipment and generally all of the personal property replacements thereof owned by and used in the operation of the premises by the Debtor.” The said financing statement was filed with the Secretary of State of New York on June 16,1966.
Thereafter, and between October 5, 1966 and November 30, 1966, at the special instance and request of Sanray Floor Covering Corp., Center Electric Co., Inc., delivered to, placed upon *782 and installed at the said Woodridge Shopping Plaza certain items of air conditioning and heating equipment.
On November 16, 1966 Galway Funding Corp. made its last advance in the sum of $16,000, under and pursuant to the said building construction loan mortgage.
On or about January 6, 1967 Sanray Floor Covering Corp. and Central Electric Co., Inc. executed a security agreement whereunder Sanray Floor Covering Corp. agreed to purchase from Central Electric Co., Inc., the aforesaid items of air conditioning and heating equipment for the sum of $14,159. On February 24, 1967, Central Electric Co., Inc. assigned the said security agreement to the Ellenville National Bank, the respondent on this motion, and on or about February 27, 1967, the Ellenville National Bank filed a UCC-1 financing statement with the Secretary of State of New York covering the said air conditioning and heating equipment.
Between June 16, 1966, the date that Galway Funding Corp. filed its UCC-1 financing statement as aforesaid, and February 27, 1967, when the Ellenville National Bank filed its financing statement, no liens or encumbrances were filed against or affected the aforesaid items of air conditioning and heating equipment other than the first mortgage held by Galway Funding Corp. pursuant to the after-acquired clause.
The essence of the controversy between plaintiff and defendant Ellenville National Bank is that both parties are claiming a security interest in the same items of air conditioning and heating equipment. Parenthetically, it must be noted that Ellenville National Bank in its answer to the complaint herein and in the prior action instituted by it in December, 1967 against Sanray Floor Covering Corp., Galway Funding Corp., Norman Sheinwald and Stanley Sheinwald, referred to the said items of air conditioning and heating equipment as personal property. Plaintiff’s security interest in said personal property is based upon the security interest granted to Galway Funding Corp. pursuant to the provisions of the first mortgage made by Sanray Floor Covering Corp. to Galway Funding Corp. dated June 14, 1966, which said mortgage was recorded in the office of the County Clerk of Sullivan County on June 20, 1966 and the UCC-1 financing statement filed with the office of the Secretary of State on June 16, 1966. The security interest of the Ellenville National Bank is based upon the security agreement dated January 6, 1967, between Sanray Floor Covering Corp. and Center Electric Co., Inc., which said security agreement was assigned to the Ellenville National Bank which filed a UCC-1 *783 financing statement with the Secretary of State on February 27, 1967.
Section 9-312 of the Uniform Commercial Code sets forth the rules for determining priorities among conflicting security interests in the same collateral. Since the security interest of defendant Ellenville National Bank is based upon a security agreement which by its terms purports to be a purchase-money security agreement, subdivision (4) of section 9-312 is applicable in determining the priorities of the parties. That section provides as follows: “ (4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter.”
The uncontroverted facts show that the aforesaid items of air conditioning and heating equipment were delivered to San-ray Floor Covering Corp., and placed upon and installed at the Woodridge Shopping Plaza between October 5, 1966 and November 30, 1966. Therefore, the said items were delivered to Sanray Floor Covering Corp. over a period ranging between 145 days and 89 days prior to the filing of the UOC-1 financing statement by the Ellenville National Bank on February 27, 1967. Since the said items of air conditioning and heating equipment were delivered to the debtor more than 10 days prior to the perfection of the security interest Ellenville National Bank on February 27, 1967, pursuant to the provisions of subdivision (4) of section 9-312 of the Uniform Commercial Code the security interest of the Ellenville National Bank is inferior and subordinate to plaintiff’s prior security interest in said air conditioning and heating equipment.
The three cases cited by defendant in its affirmation in opposition involve fixtures and not personal property. However, assuming arguendo that the items of air conditioning and heating equipment are fixtures, nevertheless, plaintiff’s lien is still superior to the lien of defendant Ellenville National Bank under the provisions of subdivision (3) of section 9-313. Subdivision (3) of section 9-313 provides as follows: “ (3) A security interest which attaches to goods after they become fixtures is valid against all persons subsequently acquiring interests in the real estate except as stated in subsection (4) but is invalid against any person with an interest in the real estate at the time the security interest attaches to the goods who has not in writing consented to the security interest or disclaimed an interest in the goods as fixtures.”
*784 It is uncontroverted that the said items of air conditioning and heating equipment were delivered to and installed at the Woodridge Shopping Plaza between October 5,1966 and November 30,1966. By reason of its having recorded its first mortgage covering the real property on June 20, 1966 and having filed a UCC-1 Financing Statement on June 16, 1966 Galway Funding Corp. had a prior existing lien on the said real property and items of air conditioning and heating equipment. Defendant Ellenville National Bank as assignee of Center Electric Co., Inc. first obtained a security interest in the said items of air conditioning on January 6, 1967 when the security agreement covering the said items was executed between Sanray Floor Covering Corp. and Center Electric Co., Inc. Subdivision (1) of section 9-204 of the Uniform Commercial Code' provides that a security interest cannot attach until there is an agreement that it attach. Therefore, Ellenville National Bank as assignee of Center Electric Co., Inc. could not have obtained a security interest in the items of air conditioning and heating equipment until the execution of the January 6, 1967 security agreement. Since the security interest of the Ellenville National Bank attached to the said items of air conditioning and heating-equipment after they had been delivered to and installed at the premises, its security interest is invalid as against plaintiff unless Galway Funding Corp. consented to the security interest or disclaimed an interest in the items of air conditioning and heating equipment as fixtures. It is undisputed that there was no such consent or disclaimer.
Since no consent or disclaimer was obtained, defendant’s security interest is invalid as against plaintiff’s prior existing first mortgage. (State Bank of Albany v. Kahn, 58 Misc 2d 655.)
Defendant last argues that the UCC-1 financing statement filed by Galway Funding Corp. should have stated that after-acquired property was covered thereby. This argument, ignores the provisions of sections 9-110 and 9 — 402 of the Uniform Commercial Code. Section 9-110 provides: “ For the purposes of this Article any description of personal property or, except as otherwise required by subsection (1) of Section 9-402 relating to the contents of a financing statement, real estate is sufficient whether or not it is specific if it reasonably identifies what is described. ’ ’
Subdivision (1) of section 9 — 402 provides: “A financing statement is sufficient if it „* * * contains a statement indicating the types, or describing the items, of collateral. ’ ’
*785 In Bank of Utica v. Smith Richfield Springs (58 Misc 2d 113), the court construed section 9-402 and held that a financing statement covering “motor vehicles” perfected a lending bank’s security interest in automobiles subsequently acquired by the debtor. In so holding, the court stated (supra, p. 114): £ ‘ Defendant further urges that this statement could not cover after-acquired property, or, in the alternative, that it should have specifically stated that it did. The purpose of the statute is to avoid the real estate type of closing where all parties go to the Clerk’s office, check the records, execute the financing statement and file it, secure in the knowledge that the creditor has first priority. The statute was designed to allow a creditor to pre-empt first rights against the borrower. It is particularly convenient in cases such as this where the security is stock in trade which is constantly changing.
‘ ‘ Adding the words ‘ after-acquired ’ to the description of the collateral may be advisable, but it is not required and in this case particularly, it is difficult to see what it would have added.” (See, also, 1 Gilmore, Security Interests in Personal Property, § 11.4, n. 7, p. 349.)
The defendant refers to some duct insulation and relays which were allegedly installed between November 30, 1966 and March 9,1967. There is nothing submitted by the defendant that would lead to any other conclusion than that such was a very minor adjustment of the installation. It is obvious that such bare statements without further proof cannot defeat the motion for summary judgment.
Defendant’s answer raises no triable issues of fact and summary judgment is granted to the plaintiff as a matter of law. The cross motion is denied.