269 So.2d 726 (1972)
AMERICAN NATIONAL BANK OF JACKSONVILLE, a National Banking Corporation, Plaintiff,
v.
INTERNATIONAL HARVESTER CREDIT CORPORATION, and Florida Truck and Tractor Company, Defendants.
No. Q-133.
District Court of Appeal of Florida, First District.
November 9, 1972.
Rehearing Denied December 20, 1972.
Richard C. Stoddard, of Bryant, Dickens, Rumph, Franson & Miller, Jacksonville, for plaintiff.
W. Sperry Lee, of Ulmer, Murchison, Ashby & Ball, Jacksonville, and E.L. Eastmoore, of Law Offices of E.L. Eastmoore, Palatka, for defendants.
WIGGINTON, Judge.
The Circuit Court of the Seventh Judicial Circuit for Putnam County has certified to this court the questions hereinafter set forth upon the declaration that they involve a construction of the Uniform Commercial Code[1] which is determinative of the cause and without controlling precedent *727 in this state. We accept the certification in accordance with the authority granted pursuant to Rule 4.6, Florida Appellate Rules, 32 F.S.A.[2]
By stipulation of the parties, the following are the controlling facts bearing upon the questions presented for decision. Plaintiff, American National Bank of Jacksonville, and defendant, International Harvester Credit Corporation, are each financing institutions. Defendant, Florida Truck and Tractor Company, is a retail dealer in farm equipment and implements.
On April 8, 1969, Machek Farms, Inc., executed a retail installment note and security agreement with plaintiff, American National, which encumbered all property thereafter acquired by Machek. Based upon this agreement the bank filed its financing statement on April 10, 1969, in the office of the clerk of the circuit court in the county of Machek's residence.
On April 25, 1969, defendant, Florida Truck, sold and delivered to Machek under a retail installment contract two items of farm equipment, each having a purchase price of slightly less than $2,000.00 but together having a combined price of approximately $4,000.00. No financing statement on this contract was ever filed in the office of the clerk of the circuit court.
On August 8, 1969, Florida Truck sold seven items of farm equipment to Machek under a retail installment contract, four of which items had a purchase price of less than $2,500.00 each and the remaining three items a price in excess of $2,500.00 each. The August 8, 1969, retail installment contract was subsequently assigned by Florida Truck to defendant, International Harvester, who on September 3, 1969, filed a financing statement in the office of the clerk of the circuit court of the county of Machek's residence.
Machek defaulted in payment of the obligation owed by it to plaintiff, American National, and also defaulted on the obligations owed by it to the defendants, International Harvester and Florida Truck. Subsequent to default, Machek voluntarily relinquished possession to Florida Truck of all of the equipment purchased from it under the retail installment contracts of April 25 and August 8, 1969. On December 7, 1970, American National filed this replevin action against International Harvester and Florida Truck by which it seeks possession of all items of farm equipment previously sold to Machek under the conditional sales contracts held by International Harvester and Florida Truck.
The first question certified for our decision is as follows:
"Under Florida Statute 679.302(1)(c), must a seller of farm equipment file a financing statement to perfect his security interest in farm equipment sold under one contract when the purchase price of each item is less than $2,500.00, but the total amount of the contract for all items exceeds $2,500.00?"
The controlling statute on which our consideration of the foregoing question must turn is as follows:
"(1) A financing statement must be filed to perfect all security interests except the following:
* * * * * *
"(c) A purchase money security interest in farm equipment having a purchase price not in excess of $2500; * * *"[3]
It is the position of plaintiff bank that the financing statement filed by it with the *728 clerk of the circuit court on April 10, 1969, perfected its security interest in all property thereafter acquired by Machek which was not subject to any other security interest having priority under the provisions of Section 679.302, F.S. It further contends that the security interests acquired by Florida Truck under its conditional sales contracts with Machek dated April 25, 1969, and August 8, 1969, were not perfected by filing financing statements within ten days after the date of each contract as required by the Uniform Commercial Code[4] and are therefore subordinate to the interest held by American National.
It is the position of both defendants, International Harvester and Florida Truck, that the security interests acquired by them in the farm equipment sold to Machek under the conditional sales contracts involved herein were exempt from the requirement that financing statements evidencing such interests be filed in the office of the clerk of the circuit court in the county of the debtor's residence because most of the items of collateral described in the contracts were sold for a purchase price of less than $2,500.00 each. They contend that it is not the total sale price of all items of collateral sold in a single contract which determines whether a financing statement must be filed in order to perfect a security interest, but that it is the purchase price of each individual item of collateral described in the contract which is controlling. They therefore reason that if the several items of collateral making up the total contract were sold for a purchase price not in excess of $2,500.00 each, no financing statement need be filed in order to perfect the security interest acquired under the conditional sales contract.
Both parties frankly concede that their research has failed to reveal any decision by a court of competent jurisdiction in this country construing a statute similar to our Uniform Commercial Code as applied to the first question certified for decision. We must therefore consider in pari materia each of the several provisions of the Code as they relate to and may have bearing upon the question with which we are confronted.
F.S. Section 679.312, F.S.A., of the Code deals with priorities among conflicting security interests in the same collateral and provides in subparagraph (4) thereof that a purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter. In order to perfect a purchase money security interest as referred to in the foregoing statute, the holder of the interest must file a financing statement thereon in the office of the clerk of the circuit court of the county in which the debtor resides.[5] Section 679.302 of the Code provides that financing statements must be filed in order to perfect all security interest with certain enumerated exceptions set forth therein. One of the exceptions specified in subparagraph (c) thereof is a purchase money security interest in farm equipment having a purchase price not in excess of $2,500.00. Section 679.107 of the Code defines "purchase money security interest" as a security interest that is taken or retained by the seller of the collateral to secure all or a part of its price.
The precise subject with which we are now concerned is the security interest taken or reserved by the seller of farm equipment in the property sold and how that security interest must be perfected in order that the lien evidenced thereby has priority over conflicting security interests in the same collateral.
From the foregoing provisions of the Code it would appear that the term "purchase money security interest" held by the seller of farm equipment is the interest which he takes or retains in all of the collateral *729 described in the contract and which consists of the total amount of the debt stipulated in the contract. The seller retains a lien on the collateral until the entire debt evidenced by the contract is paid in full. The security interest is not severable but attaches to all items as a whole. Payment by the debtor of a part of the contract price does not pro tanto satisfy the security interest held by the creditor, nor does it entitle the debtor to claim clear unencumbered title to a part of the collateral free from the lien of the security interest held by the creditor. The vendor who sells to a purchaser two or more separate items of farm equipment under a retail installment contract, each having a purchase price not in excess of $2,500.00 but together having an aggregate price in excess of that amount, retains a security interest in the collateral without the necessity of filing a financing statement only if he sells such items under separate retail installment contracts. If this is done, however, the payment of the amount due under one contract will free the collateral described therein from the lien of the security interest held by the seller even though the buyer defaults in his payments under the other contracts. If, however, the seller demands greater security by including in one single retail installment contract two or more items of collateral sold by him to the debtor, the aggregate purchase price of which exceeds $2,500.00, then in order to perfect his security interest against conflicting security interests perfected by other creditors, he must file his financing statement as required by the terms and provisions of the statute. It is the total purchase price of the farm equipment sold under a single contract of purchase and sale which determines whether a financing statement evidencing the security interest retained by the seller must be filed in accordance with the requirements of the statute. The purchase price of the individual items of equipment included in the single contract of sale is material only in determining whether the total amount thereof exceeds the sum of $2,500.00. If the total sale price of all items sold exceeds the statutory minimum of $2,500.00, then a financing statement must be filed in order to perfect the security interest; otherwise, no such filing is required.
For the reasons set forth above, it is our conclusion and we so hold that the above-quoted question certified for our decision must be answered in the affirmative.
The second question certified for our consideration is as follows:
"Under Florida Statute 679.312(4) and (5), does a party with a security interest in after acquired property take priority over a party with a purchase money security interest which was not perfected within ten days after the debtor took possession of the collateral?"
From the stipulation of facts filed by the parties, it is agreed that plaintiff, American National, is the owner and holder of a valid retail installment note and security agreement executed by Machek which has the legal effect of encumbering all tangible personal property thereafter acquired by Machek. American National's security interest is evidenced by a financing statement properly and timely filed by it with the clerk of the circuit court as required by the above-quoted provision of the Code.
It is agreed that neither Florida Truck nor International Harvester filed a financing statement on the security interest reserved in the seven items of farm equipment sold to Machek under the retail installment contract of August 8, 1969, until more than ten days after Machek received possession of the collateral. In fact, such financing statement was not filed by International Harvester until September 3, 1969.
It is the contention of American National that its security interest under the financing statement filed by it on April 10, 1969, attached to and became a lien on all farm equipment thereafter acquired by Machek *730 which was not subject to a prior lien arising by virtue of a duly perfected security interest held by another. American National insists that Florida Truck had only ten days after August 8, 1969, when it delivered possession to Machek of the farm equipment sold to it under the retail installment contract of that date, within which to perfect its security interest by filing a financing statement. Since the financing statement covering the collateral secured by the August 8, 1969, contract was not filed until September 3, 1969, the security interest held by Florida Truck which was assigned to International Harvester was never perfected as against American National, and the collateral included in its contract became subject to the lien of the security interest held by American National under its previously filed financing statement with Machek.
The provision of the Code relating to the question now considered provides as follows:
"In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined as follows:
"(a) In the order of filing if both are perfected by filing, regardless of which security interest attached first under § 679.9-204(1) and whether it attached before or after filing;"[6]
The precise question now considered has arisen in several cases decided in other jurisdictions. In each case it was held that a security interest taken or retained by a creditor in after-acquired property of a debtor as evidenced by a properly and timely filed financing statement has priority over the security interest taken or retained by a subsequent creditor in the same property whose security interest was not perfected by the filing of a financing statement within the limited time required by the Code.[7] We find no decisions to the contrary, and none have been called to our attention by counsel for the parties.
International Harvester takes the position that the fact that its financing statement evidencing its security interest was not filed within the time limited by the Code should not cause its lien to be subordinated to that of American National because the relative position of the parties did not change during the period of time from August 8, 1969, when the retail installment contract with Machek was executed, and September 3, 1969, when the financing statement was actually filed. International Harvester therefore reasons that since Machek was not extended additional credit by American National on the strength of the after-acquired property in which International Harvester has a security interest, such interest should not be defeated merely because of its delay in filing its financing statement. A similar position was advanced but rejected by the New York Supreme Court in National Cash Register Co. v. Mishkin's, supra, when it said:
"... At issue here is not the protection of a later taker with actual knowledge of a prior interest which had been improperly perfected but rather the protection of an earlier taker against a later interest which had been improperly perfected. Furthermore, defendant undoubtedly obtained notice of plaintiff's interest when it walked into the premises and found three shiny new cash registers rather than as a result of plaintiff's filing."
*731 So it is in the case sub judice. At issue here is the protection of American National, an earlier taker, against International Harvester, a later interest which has been improperly perfected. Furthermore, International Harvester had either actual or constructive notice of American National's security interest evidenced by its financing statement with Machek which was on file in the office of the clerk of the circuit court where Machek resided at the time International Harvester purchased its security interest from Florida Truck. To hold otherwise, as does the dissenting opinion authored by Judge Rawls, would repudiate and squarely conflict with the settled law of this state regarding the validity of liens created by mortgagors on property to be acquired by them in the future. As said by our Supreme Court in Rose v. Lurton Co.:[8]
"It is now undoubtedly well settled in this jurisdiction that when it is appropriately so worded, a mortgage on after-acquired property of the mortgagor will be held valid, and enforceable between the parties to it, by a suit for foreclosure. Davis v. Horne, 54 Fla. 563, 45 So. 476, 127 Am.St.Rep. 151; Marion Mortgage Co. v. Teate, 98 Fla. 713, 124 So. 172."
In commenting upon the evolution of the principle that a mortgagor may validly encumber property to be later acquired by him, the author of Florida Jurisprudence says:
"At common law a mortgage of property to be acquired by the mortgagor in the future is absolutely void. On the other hand, equity considers that done which the mortgagor has agreed to do, and in the case of a contract to mortgage property to be acquired in the future, whether real or personal, equity treats the mortgage as already attaching to the newly acquired property as it comes into the mortgagor's hands. In other words, a clause in a mortgage subjecting subsequently acquired property to the lien of the mortgage is valid."[9]
For the reasons and upon the authorities above cited, it is our view and we so hold that the second question stated above must also be and it is hereby answered in the affirmative.
RAWLS, Acting C.J., concurs in part, dissents in part.
JOHNSON, J., specially concurs.
RAWLS, Acting Chief Judge (concurring in part, dissenting in part).
The law is an ass.[1] This aphorism is especially applicable to the instant facts for by detailing various provisions of the Uniform Commercial Code the majority has reached an illogical result.
As to the first question certified, I agree with the conclusion of the majority that the term "purchase money security interest" relates to the total amount of the collateral itemized in the contract and is not severable as to the individual items. It is the conclusion reached as to the second question submitted with which I strongly disagree.
The bank procured from Machek Farms, Inc. a security agreement on April 8, 1969, for the repayment of an installment note. A clause granting to the bank further security on all after-acquired property by the debtor was contained in the agreement. Subsequently, on April 25, 1969, Florida Truck and Tractor Company sold to Machek Farms considerable farm machinery pursuant to a retail installment contract. By unduly emphasizing the formalistic language of the Uniform Commercial Code, *732 the majority has determined that the subject machinery became the "after-acquired property" of Machek Farms free and clear of all vendor liens solely because the security instrument of the vendor was not properly recorded within 10 days of the transaction.[2] My question is: How did the bank acquire as security for its debt property that the debtor did not even own? It is my view that Machek Farms was liable to Florida Truck and Tractor Company and International Harvester Credit Corporation for the sums remaining unpaid on the machinery. The bank's interest in this "after-acquired property" was limited to Machek's equity in same. To permit the bank under these facts to replevy the subject farm machinery from Florida Truck and Tractor Company and International Harvester Credit Corporation, in my opinion, constitutes legal larceny.[3]
JOHNSON, Judge (specially concurring):
I agree with the conclusion reached by Judges Rawls and Wigginton as to the answer to question number one certified to us, but for a slightly different reason, to wit: It is necessary for us to conclude from the stipulation of facts that the Retail Installment Contracts in question were drawn pursuant to F.S. § 520.34, F.S.A., and without any verbiage therein indicating any severability of items of equipment from the total contract sales. Also, we must assume that the Uniform Commercial Code Section 671.201(11) is applicable wherein the definition of "contract" is set out as: "means the total legal obligation which results from the parties' agreement as affected by this code ..." This must assume that the "agreement" as defined in the Code at Section 671.201(3) does not limit the security to the total contract, nor by the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this Code. In other words, I think the peculiar wording of each contract, as well as the known practice between the Dealer (seller) and the Farmer (buyer), would control in determining whether or not the filing is exempt.
As to question number two, assuming that both Retail Installment Contracts involved in this case were subject to the same assumptions raised by me in determining the certified question one, I agree with the conclusion reached by Judge Wigginton and disagree with the opinion authored by Judge Rawls, primarily for the reason that if the prior perfected security interest did not attach to the whole collateral, but only on the equity paid for by the buyer, then there would be no need for the seller to file except to protect from future creditors, and even then, if the purchase money security was retained, under the theory of Judge Rawls, it would probably still be good.
In the case before us, the Stipulation of Facts, as agreed to by all parties, leaves us, I think, with too many contingencies for us to intelligently answer the questions certified to us; and I suggest that the lower court or the parties furnish us with a copy of the Installment Contracts and the Financing Statements filed by each of the parties.
NOTES
[1] F.S. Ch. 679, F.S.A.
[2] Rule 4.6, subd. a., F.A.R.

"When Certified. When it shall appear to a judge of the lower court that there is involved in any cause pending before him questions or propositions of law that are determinative of the cause and are without controlling precedent in this state and that instruction from the Court will facilitate the proper disposition of the cause, said judge, on his own motion or on motion of either party, may certify said question or proposition of law to the Court for instruction."
[3] F.S. § 679.302(1)(c), F.S.A.
[4] F.S. § 679.312(4), F.S.A.
[5] F.S. § 679.401(1)(a), F.S.A.
[6] F.S. § 679.312(5)(a), F.S.A.
[7] National Cash Register Company v. Firestone & Co., (1963) 346 Mass. 255, 191 N.E.2d 471; National Cash Register Co. v. Mishkin's 125th St. Inc., (1970) 8 UCC R.S. 411, 415; Sunshine v. Sanray Floor Covering Corp., (1970) 64 Misc.2d 780, 315 N.Y.S.2d 937.
[8] Rose v. Lurton Co., 111 Fla. 424, 149 So. 557, 558.
[9] 22 Fla.Jur. 155, Mortgages, § 25.
[1] Charles Dickens, Oliver Twist, p. 399 (Oxford Press, 1961 ed.):

"If the law supposes that said Mr. Bumble ... the law is a ass  an idiot."
[2] F.S. 679.312(4), F.S.A.
[3] See Ford Motor Company v. Pittman, 227 So.2d 246, 249 (1 Fla.App. 1969), where this court refused to adhere to the philosophy that the "enactment of the Uniform Commercial Code in 1965 [swept] away in one stroke of the legislative broom the jurisprudence of this State... ." I continue to support this position.