**In re BARNES FREIGHT LINE, INC., Debtor.**

**BARNES FREIGHT LINE, INC., Plaintiff,**

v.

**CHASE COMMERCIAL CORPORATION, Central Terminal and Transfer Co., Inc., and the United States of America, By and Through its Agency the Internal Revenue Service, Interpleaded Defendants.**

**Bankruptcy No. 82–00341N.
Adv. No. 82–0169N.**

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

May 4, 1983.

Joseph J. Burton, Jr., Swift, Currie, McGhee & Hiers, Atlanta, Ga., for plaintiff.

W. Rhett Tanner, Hansell & Post, Atlanta, Ga., for Chase Commercial Corp.

William B. Covington, Carrollton, Ga., for Central Terminal & Transfer Co., Inc.

Lenore DiStefano, Attorney, Tax Div., Dept. of Justice, Washington, D.C., for U.S.

Thomas D. Richardson, Robert N. Farrar, Brinson, Askew & Berry, Rome, Ga., for Sproull Dempsey & Sons Auction Co.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

On August 13, 1982, the above-styled Chapter 11 proceeding was filed. On August 20, 1982, the debtor filed its Complaint for Turnover of Property seeking the proceeds from the auction of certain of the debtor's equipment which was then being held by Sproull Dempsey & Sons Auction Company ("Sproull Dempsey"). On September 21, 1982, Sproull Dempsey filed its answer and counterclaim for interpleader and motion to dismiss itself as a defendant in the interpleader action. The Court ordered that Sproull Dempsey pay into the Registry of the Court $196,226.30, said amount representing the proceeds of the auction which Sproull Dempsey had conducted and on October 25, 1982, the Court dismissed Sproull Dempsey from the interpleader action. On November 4, 1982, Barnes Freight Line, Inc. ("Barnes") filed its motion to add parties defendants and on November 15, 1982, Barnes amended its complaint to reflect the addition of Chase Commercial Corporation ("Chase"), Central Terminal and Transfer Co., Inc., and The United States of America ("IRS") as party defendants. These party-defendants were added on November 15, 1982. This case is presently before the Court on Barnes' motion for summary judgment and the IRS' and Chase's cross-motions for summary judgment.

The facts giving rise to the motions for summary judgment which have been filed are as follows: At the time of the filing of the debtor's petition, Sproull Dempsey held approximately $193,393.19 in proceeds generated from the sale of certain of the debtor's equipment. Chase alleges that it has a perfected security interest in this fund in the amount of $46,467.29. On July 28, 1982, the day Sproull Dempsey conducted its auction, the IRS served a notice of levy upon Sproull Dempsey, which levy stated that Barnes was indebted to the IRS in the amount of $477,840.19. The IRS filed its Notice of Tax Lien on July 29, 1982. The debtor is seeking the turnover of the auction fund. The debtor contests the IRS' claim, while it concedes that Chase has a valid secured claim to a portion of the auction funds. Central has not participated in this case, apparently in recognition of the fact that its judgment lien is a voidable preference.

## JURISDICTION

The IRS has asserted in its motion for summary judgment that this Court lacks jurisdiction over this case because the

property that is the subject of this action is not property of the bankruptcy estate. The IRS bases this argument on the case of *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). The issues raised by the IRS concerning the jurisdiction of this Court have been addressed in great detail in the case of *United States v. Whiting Pools, Inc.,* 674 F.2d 144 (2d Cir. 1982). *Whiting Pools* clearly sets forth the fact that, even where property is seized by the IRS prior to the filing of a petition in bankruptcy, until that property is sold and the debtor's corresponding right of redemption under 26 U.S.C. § 6337 is extinguished, the debtor retains an interest in the subject property. *Whiting Pools* also limited the holding in *Phelps, supra,* by noting that *Phelps* was a case under the Bankruptcy Act and that it dealt with the distinction between summary and plenary jurisdiction which is not relevant under the current Bankruptcy Code as adopted in 1978. *United States v. Whiting Pools, Inc.,* 674 F.2d at 156. Therefore, pursuant to the holding in *United States v. Whiting Pools, Inc., supra,* the IRS' claim that this Court does not have jurisdiction to hear this case or to order turnover is rejected.

## TURNOVER

■ Having determined that the auction fund presently in the Registry of the Court is subject to turnover, the Court will concern itself with the question of whether turnover may be ordered in the instant case. 11 U.S.C. § 542 allows turnover of property which a debtor in possession may use, sell, or lease under § 363 of the Bankruptcy Code. This Court, as did the Court in *Whiting Pools, supra,* will order turnover only if adequate protection can be provided to an interested party adversely affected by an order of turnover. See *In re International Horizons, Inc., et al.,* 15 B.R. 798, 5 C.B.C.2d 849 (Bkrtcy.N.D.Ga.1981); Reversed on other grounds, 7 C.B.C.2d 109 (N.D.Ga.1982); 11 U.S.C. § 363(e). The debtor in this case has given no indication of what, if any, adequate protection can be offered the IRS and Chase for their interests in the auction fund. While it is not

unusual to allow a debtor to use cash proceeds, the use of cash must be conditioned on adequate protection for its use. In the instant case, where the debtor is undergoing a liquidation through a Chapter 11 proceeding, the Court does not see any reason to require turnover of the auction fund to the debtor.

■ The debtor has argued that failure to require turnover of the auction fund would frustrate the provisions of 11 U.S.C. § 507, which section establishes priority for payment in bankruptcy proceedings. This contention would have merit in the event that the IRS were an unsecured creditor. However, when the IRS has levied against the property, even though the IRS does not have actual physical possession of said property, the IRS obtains a status similar to that of a secured creditor that has repossessed property. *Phelps v. United States,* 421 U.S. at 337, 95 S.Ct. at 1732; *United States v. Whiting Pools, Inc., supra.* Accordingly, the Court finds that the Internal Revenue Service has a valid lien in the auction fund and therefore that § 507 of the Bankruptcy Code is not at issue in the instant case.

## PRIORITY

The next issue the Court must address is the relative priority of interest between the IRS and Chase. The IRS has asserted in its Brief in Support of Motion for Summary Judgment that Chase's description in its financing statement is inadequate to provide Chase with a perfected security interest in the auction fund. The IRS bases this contention on the fact that the description contained in Chase's financing statement does not include equipment, and that this requires the conclusion that Chase's security interest cannot include the proceeds from the sale of equipment.

■ Chase's security agreement reads in relevant part as follows:

"Debtor hereby grants to Secured Party a security interest in all *Accounts, whether now existing or hereafter arising,* including, without limitation, Pledged Accounts, all guarantees, securities and liens for payment of any Account, all

right, title and interest of Debtor in the merchandise or services which gave rise to any Account, including the rights of reclamation and stoppage in transit, all rights of an unpaid seller of merchandise or services, and all rights of Debtor earned or yet to be earned under contracts with Account debtors [all herein called the 'Collateral'] and the proceeds of the Collateral, including, without limitation, all proceeds of fire, credit or other insurance." [emphasis added]

Ga.Code § 109A–9–106 (Official Code of Georgia § 11–9–106) defines an "account" to mean "any right to payment for *goods* sold or leased or for services rendered which is not evidenced by an instrument or chattel paper." [emphasis added] Ga.Code § 109A–9–109 (Official Code of Georgia § 11–9–109) defines "goods" to be either consumer goods, equipment, farm products, or inventory. The "right to payment for goods sold," which is part of the definition of an account, contemplates the right to payment for equipment sold since equipment is included in the definition of goods. In the instant case, the question of whether Chase has a security interest in the account arising out of the sale of the debtor's equipment depends on whether the subject security agreement contains an after-acquired property clause, inasmuch the account at issue did not exist at the time the debtor granted Chase its security interest.

Chase's security agreement states that Chase has a security interest in all accounts, "whether now existing or hereafter arising." Ga.Code § 109A–9–204(1) (Official Code of Georgia § 11–9–204(1)) clearly sets forth the fact that a security agreement which contains an after-acquired property clause is enforceable under Georgia law. *Tuftco Sales Corp. v. Garrison Carpet Mills,* 158 Ga. 674, 282 S.E.2d 159 (1981). Therefore, the Court finds that Chase does have a security interest in the account arising out of the auction of the debtor's equipment, even though Chase did not possess a security interest in equipment, the sale of which generated this account. *Tuftco Sales Corp., supra; In re Sterling Navigation Co., Ltd.,* 15 B.R. 489 (Bkrtcy.S. D.N.Y.1981).

The final area of the Court's inquiry into priority of interests concerns whether the description contained in Chase's financing statement included accounts arising after the initial grant by Barnes to Chase of a security interest in accounts. The subject financing statement contains the following description:

"*All of the following property and interests in property of Debtor, whether now owned or existing or hereafter acquired or arising* and wheresoever located:

(a) All accounts receivable, contract rights, general intangibles, chattel paper, notes, drafts, acceptances and *all other debts, obligations and liabilities in whatever form owing to Debtor from any person,* firm, corporation, or any other legal entity (hereinafter called 'Accounts'), all guarantees, securities and liens for payments of any Account, all right, title and interest of Debtor in the merchandise or services which gave rise to any Account, including the rights of reclamation and stoppage in transit, all rights of an unpaid seller of merchandise or services, and all rights of Debtor earned or yet to be earned under contracts with account debtors;

(b) all proceeds of any and all of the following, including, without limitation, all proceeds of fire, credit or other insurance covering any and all of the foregoing property." [emphasis added].

The language "all other debts, obligations and liabilities in whatever form owing to Debtor from any person . . . (hereinafter called 'Accounts')" and the phrase "all . . . property . . . now owned or existing or hereafter acquired or arising." sufficiently describes Chase's security interest to enable Chase to have perfected this security interest through the filing of its financing statement. Therefore, the Court finds that as of November 2, 1981, Chase had a perfected security interest in the Sproull Dempsey auction fund and that this perfected security interest has priority over the IRS lien filed on July 29, 1982.

The final issue before the Court is the application of the attorneys for Sproull Dempsey for $1,000.00 as reasonable attor-

ney's fees incurred in filing its counterclaim for interpleader and response to Barnes' complaint for turnover of property. The Court finds that counsel for Sproull Dempsey is entitled to reasonable fees in the amount of $1,000.00, as requested. 3A *Moore's Federal Practice* ¶ 22.16[2], pp. 22–165.

Therefore, for the above-stated reasons, the Court denies the relief sought by Barnes in its complaint for turnover. The Court finds that Chase Commercial Corporation has a priority perfected security interest in the fund in the Registry of the Court and that it is to be paid its principal and interest in full, less $1,000.00, which is to be paid to Brinson, Askew & Berry as attorney's fees incurred by the filing of an interpleader in this case. The Court directs further that the United States of America, by and through its agency, The Internal Revenue Service, is to receive the balance of the funds held in the Registry of the Court pursuant to their tax lien and levy on the auction fund prior to its being paid into the Registry of the Court.

IT IS SO ORDERED.