**ORIX CREDIT ALLIANCE, INC., Appellant,**

v.

**OMNIBANK, N.A., Appellee.**

**No. B14–92–01271–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 8, 1993.

Rehearing Denied Sept. 2, 1993.

John Mayer, Houston, for appellant.

Joseph Van Nest, David S. Elder, Houston, for appellee.

Before MURPHY, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

On October 6, 1992, the trial court signed a judgment granting the motion for summary judgment filed by Omnibank, N.A. (Omnibank). Orix Credit Alliance, Inc. (Orix) brings this appeal contending that the trial court erred in granting Omnibank's motion and denying Orix's motion for summary judgment. We affirm.

This case concerns a dispute between two creditors of W.T. Stephens. Both Omnibank and Orix contend that they hold superior security interests in funds payable to Stephens under an agreement between Stephens and BFI Special Services, Inc. (BFI).

On March 4, 1988, Stephens executed a promissory note to Orix in which he promised to pay Orix approximately $202,140. On the same date, Stephens executed a written security agreement in which he

granted Orix a security interest in three specific pieces of equipment and:

all other goods, chattels, machinery, equipment, inventory, accounts, chattel paper, notes receivable, accounts receivable, furniture, fixtures and property of every kind and nature, wherever located, now or hereafter belonging to Mortgagor.

On March 14, 1988, Orix filed a copy of the security agreement with the Office of the Texas Secretary of State as a financing statement.

Stephens made some payments to Orix under the March 4th note, but never paid it off. On March 27, 1991, Stephens executed a second note to Orix for approximately $344,452.73, plus interest. This second note was to evidence all remaining indebtedness owed by Stephens to Orix. The note was to be paid in installments until the entire amount became due on July 1, 1991. Stephens also failed to pay the second note when it became due and he remained indebted to Orix.

During the same time period that Stephens was executing the notes to Orix, he and his partner, Cody Birdwell, sold all of the stock of their company, W.T. Stephens Contracting, Inc., to BFI, a subsidiary of Browning Ferris Industries, Inc. Stephens was the principal officer and stockholder in W.T. Stephens Contracting, Inc., a company in the asbestos abatement business. After the stock was sold on August 18, 1988, Stephens and Birdwell entered into a separate written covenant with BFI, in which Stephens and Birdwell agreed not to compete with BFI in the asbestos abatement business for five years. In consideration for this covenant not to compete, BFI agreed to pay the former owners an amount equal to one-half of one percent of the gross revenues of all national and international asbestos abatement operations of BFI and its affiliates. Stephens and Birdwell would split this amount equally. BFI promised to pay this percentage to Stephens and Birdwell for five years with each payment made annually on or before October 31st.

On November 30, 1989, Stephens borrowed some money from Birdwell. As security for the loan, Stephens granted Birdwell a security interest in his half of the proceeds payable under the BFI agreement. A financing statement evidencing this agreement was filed with the Secretary of State on December 18, 1989. The statement specifically described the percentage payable to Stephens under the BFI agreement.

On February 28, 1990, Stephens borrowed $300,000 from Omnibank. As security, Stephens granted Omnibank a security interest in those same proceeds he was to receive from the BFI non-competition agreement. The BFI agreement was specifically identified and covered by the security agreement and financing statement filed by Omnibank. So that Omnibank would be able to perfect its security interest, Stephens asked Birdwell to assign Omnibank his security interest in that same collateral. The next month, Birdwell assigned his security interest in the BFI agreement to Omnibank. A "UCC–3 Partial Assignment" evidencing this assignment, signed by Stephens and Cody, was recorded in the Office of the Secretary of State on March 9, 1990. The assignment was also evidence by a "UCC–1 Financing Statement" executed by Stephens and filed with the Secretary of State on March 19, 1990. Both of these documents described in detail the percentage payable to Stephens under the BFI agreement.

Ultimately, Stephens filed a petition for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas. Stephens is insolvent at this time. Both Orix and Omnibank claimed a superior security interest in the percentage payable to Stephens under the BFI agreement. On March 5, 1992, Orix filed its original petition in Harris County asking the trial court to declare its security interest superior. Orix also claimed that Omnibank had converted the funds under the BFI agreement because some of the funds from the covenant not to compete had already been paid to Omnibank. Both parties ultimately filed motions for summary judgment. The trial court determined that Omnibank was

entitled to judgment as a matter of law. Orix appeals that decision.

■ A summary judgment is not entitled to the same deference given to a judgment following a trial on the merits. When reviewing the grant or denial of a summary judgment, the appellate court does not view the evidence in the light most favorable to the judgment of the trial court. At either the trial or appellate level, the movant must prove it was entitled to judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); Tex. R.Civ.P. 166a. Generally, if the movant fails to prove entitlement to a judgment as a matter of law, the appellate court must remand the case for a trial on the merits. *Id.* However, when both parties move for summary judgment and one such motion is granted and the other is denied, the appellate court should determine all questions presented, and may reverse the trial court's judgment and render such judgment as the trial court should have rendered. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988); *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396 (Tex.1958).

■ The standards for reviewing a summary judgment have been set by the Texas Supreme Court:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

In its first point of error, Orix claims the trial court erred in granting Omnibank's motion for summary judgment and denying Orix's motion for summary judgment because the copy of Orix's security agreement satisfied the requirement of a financing statement under Tex.Bus. & Com.Code Ann. § 9.402(a) (Tex. UCC) (Vernon 1991).

■ Appellees have not contested this point on appeal, and we agree that the "copy" of Orix's security agreement, filed as a financing statement, was sufficient proof of its existence. Tex.Bus. & Com.Code Ann. § 9.402(a) states that a financing statement is sufficient if it give the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor, and contains a statement describing the collateral. *Id.* A copy of the security agreement is sufficient as a financing statement if it contains the information set out above. *Id.* Further, a carbon or photographic copy of the security agreement may be filed if the security agreement so provides.[1] *Id.*

■ In its motion for summary judgment, Omnibank argued that Orix's security agreement, which was filed as its financing statement, did not contain the address of the debtor, W.T. Stephens. This contention is incorrect. The security agreement does list an address for Stephens. Section 9.402(a) simply requires that a mailing address be listed for the debtor. Orix complied with that requirement.

In its supplemental motion for summary judgment, Omnibank alleged that the security agreement was insufficient as a financing statement because it did not contain the address of the secured party. This is incorrect. Stamped on the top of the security agreement is the name of the secured party and a New York address. This is sufficient to meet the requirement listed in § 9.402(a).

We agree that Orix's security agreement contained the information required and was therefore sufficient as a financing state-

1. In this case, Orix did file a copy of the security agreement; however, the security agreement expressly provided that a reproduction of the security agreement could be filed as a financing statement.

ment under § 9.402(a). Orix's first point of error is sustained; however, simply because the security agreement was sufficient to be filed as a financing statement does not mean that Orix is entitled to judgment as a matter of law. We must still determine whether Orix's security agreement gave Orix a security interest in Stephens' right to receive payment of funds received pursuant to the covenant not to compete.

In its second point of error, Orix argues that the trial court erred in granting Omnibank's motion and denying Orix's motion because Orix's security interest covered the amounts payable under the BFI agreement. Orix contends that its security interest attached to the amounts payable under the BFI agreement because its security interest attached to "all personal property" of W.T. Stephens.

As we stated above, Orix's security agreement granted Orix a security interest in three specific pieces of equipment and:

goods, chattels, machinery, equipment, inventory, accounts, chattel paper, notes receivable, accounts receivable, furniture, fixtures and property of every kind and nature, wherever located, now or hereafter belonging to the Mortgagor.

Orix argues that this description is broad enough to cover the monies payable under the BFI agreement. Orix contends that the description covers all of W.T. Stephens' personal property and extends to after acquired property, which the BFI agreement amounts would be since the agreement was not executed until several months after the security agreement was filed. In this argument, Orix is relying on the phrase "and property, wherever located, now or hereafter belonging to the Mortgagor" to support its argument that the description was sufficient to cover the amounts payable under the BFI agreement.

■ Section 9.110 of the Texas Business and Commerce Code governs the sufficiency of collateral descriptions in a security agreement. It states, in pertinent part:

... any description of personal property or real estate is sufficient for the purposes of this chapter whether or not it is specific if it reasonably identifies what is described.

TEX.BUS. & COM.CODE ANN. § 9.110 (Tex. UCC) (Vernon 1991). The commentary under this section states that the test of the sufficiency of a description is whether the description does the job assigned to it, that is, does the description make possible the identification of what is described. TEX. BUS. & COM.CODE ANN. § 9.110 cmt. (Tex. UCC) (Vernon 1991); *see Unicut, Inc. v. Texas Commerce Bank–Chemical,* 704 S.W.2d 442, 444 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). While the so-called "serial number" test is no longer in effect, we still must be able to identify the collateral from the description contained in the security agreement. *See* TEX.BUS. & COM.CODE ANN. § 9.110 cmt. (Tex. UCC) (Vernon 1991).

■ According to the terms of the agreement between Stephens, Birdwell, and BFI, BFI would pay Stephens and Birdwell a percentage of its revenues from asbestos abatement operations for five years if the two men did not compete with BFI during that time. This is clearly a covenant not to compete, and in fact, the document is entitled "AGREEMENT FOR COVENANT NOT TO COMPETE."[2] Therefore, the question is: does the description contained in Orix's security agreement sufficiently identify the right of Stephens to receive payments under the covenant not to compete so as to give Orix a valid security interest?

Indulging every reasonable inference in favor of the nonmovant, Orix, we hold that under § 9.110 the description "property of every kind and nature, wherever located, now or hereafter acquired" is insufficient as a matter of law to cover the right to receive payments under the covenant not to compete.

---

**2.** Stephens and Birdwell also sold BFI all of the W.T. Stephens Contracting, Inc. stock. However, this was accomplished in a separate purchase agreement. Thus, the sale of the stock is not part of the covenant not to compete.

The phrase used in the security agreement "property of every kind and nature, wherever located" plainly refers to tangible property. If an item of property is located somewhere, it has a physical form. Black's defines "tangible" as:

> Having or possessing physical form. Capable of being touched and seen; perceptible to the touch; tactile; palpable; capable of being possessed or realized; readily apprehensible by the mind; real; substantial.

BLACK'S LAW DICTIONARY 1456 (6th ed.1990). A right to receive payments under a covenant not to compete has no physical form; it cannot be seen or touched. Thus, such a right is intangible. This interpretation follows the definition in Black's for intangibles:

> Property that is a "right" such as a patent, copyright, trademark, etc, or one which is lacking physical existence; such as goodwill.

BLACK'S LAW DICTIONARY (6th ed.1990). What Stephens had was a right to receive payments under a covenant not to compete. Therefore, the description contained in the security agreement, clearly referring to tangible property, did not describe or identify the collateral at issue here, intangible property.

Orix cites numerous cases from other jurisdictions for the proposition that the phrase "all personal property" is a sufficient description under § 9.110. We have reviewed all of those cases and find that they are distinguishable.

Six of the cases cited by Orix are inapplicable because in none of them do the courts hold that super generic descriptions (which were clearly descriptions of some kind of tangible property) were sufficient to cover intangible property. *See Donald v. Madison Indus., Inc.*, 483 F.2d 837 (10th Cir. 1973) (holding that description "all inventory accounts, machinery, equipment, finished products and products being manufactured. Also, everything connected with said business in any way" sufficient to cover trailers); *In re Legal Data Systems, Inc.*, 135 B.R. 199 (Bankr.D.Mass.1991) (holding description "all of the Debtor's

properties, assets and rights of every kind and nature, wherever located" sufficient to cover equipment); *Sunshine v. Sanray Floor Covering Corp.*, 64 Misc.2d 780, 315 N.Y.S.2d 937, 8 U.C.C.Rep.Serv. 738 (1970) (holding description which used phrase "articles of personal property now or hereafter attached to, delivered for use, installed in or used in connection with said premises" sufficient to cover air conditioning and heating equipment); *In re JCM Coop. Inc.*, 8 U.C.C. Rep. Serv. 247, 1970 WL 12552 (Bankr.W.D.Mich.1970) (holding description "all tangible, personal property now owned by the Debtor, or which may hereafter be acquired" sufficient to cover equipment); *FDIC v. Hill*, 13 Mass.App. 514, 434 N.E.2d 1029 (1982) (holding description "all personal property" sufficient to cover equipment); *James Talcott, Inc. v. Franklin Nat'l Bank of Minneapolis*, 292 Minn. 277, 194 N.W.2d 775 (1972) (holding description "all of the goods then owned or to be owned in the future" sufficient to cover equipment and vehicles).

Orix also cites *Unicut*, a Texas case decided by this court, and argues that it supports its contention. In *Unicut*, we held that the description "[A]ll goods, merchandise, raw material, goods in process, finished goods, and other tangible personal property of whatever nature now owned by Debtor or hereafter acquired ... all Accounts, Chattel Paper and general intangibles ..." was sufficient to give Texas Commerce Bank–Chemical a security interest in inventory. *Unicut*, 704 S.W.2d at 444. Like the cases cited above, a "catch all" description of **tangible** property was held to be sufficient to cover the **tangible** property in dispute.

The case before us is completely different from those cited above. Here, Orix is asking this court to hold that a phrase which clearly describes tangible property is sufficient to cover and put others on notice that it covers intangible property. The cases cited by Orix do not support this position.

Three of the cases cited by Orix do not apply here because they do not limit the "property" to tangible, or they specifically

list intangibles. The case of *In re C.C. & Co., Inc.*, 86 B.R. 485 (Bankr.E.D.Va.1988) held that a description containing the phrase "personal property" was sufficient to include general intangibles, i.e., a tradename. In *In re Parsons College*, 1 B.C.D. 122 (Bankr.S.D.Iowa 1974), the Iowa bankruptcy court held that the description "all personal property of the debtor, whether now owned or hereafter acquired" was sufficient to perfect a security interest. *Id.*[3] However, Orix's security agreement used the phrase "personal property, wherever located". As previously discussed, the phrase "wherever located" limits the description to tangible personal property. The descriptions in the case *In re C.C. & Co.* and *In re Parsons College* are not so limited. Therefore, the cases are distinguishable.

*In re Associated Transport, Inc.*, 3 B.R. 124 (Bankr.S.D.N.Y.1980), held that the description "all personal property ... tangible or intangible" was sufficient. Thus, the description specifically included intangibles. The Orix security agreement never mentioned intangible property.

Two other cases cited by Orix held that descriptions that used the term "assets" were sufficient to cover the disputed property. *In re Mitchell Bros. Const., Inc.*, 52 B.R. 92 (Bankr.W.D.Wis.1985); *Young v. Golden State Bank*, 39 Colo.App. 45, 560 P.2d 855 (1977). The term "asset" is very broad. Black's defines it as:

Property of all kinds, real and personal, tangible and intangible, including inter alia, for certain purposes, patents and causes of action which belong to any person including a corporation and the estate of a decedents. The entire property of a person, association, corporation, or estate that is applicable or subject to payment of his or her or its debts.

BLACK'S LAW DICTIONARY 117 (6th ed.1990). The term, by its definition, includes tangibles and intangibles. Thus, like the cases previously distinguished, a description using the word "assets" does not limit itself to tangible property. Orix clearly limited

itself to tangible property by use of the phrase "wherever located." Only tangible property can be "located" anywhere. These two cases do not support the argument proposed by Orix.

Also cited in support of Orix's position is a case which does contain a super generic description; however, the issue in that case, and the only context in which the description of the collateral was discussed, was whether the description was sufficient to cover certain after acquired property. *In re Barnes Freight Line, Inc.*, 29 B.R. 664 (Bankr.N.D.Ga.1983). That is not the issue in the case before this court. Orix also cited *Crow–Southland Joint Venture No. 1 v. North Fort Worth Bank*, 838 S.W.2d 720 (Tex.App.—Fort Worth 1992, writ denied). Like *Barnes*, the issue in *Crow–Southland* was not the sufficiency of the description in the security agreement; rather, the issue in *Crow–Southland* was whether the financing statement, which was missing an exhibit, was sufficient to put a second creditor on notice of the first creditor's security interest. *Id.* at 722–23. The Fort Worth court was not asked to determine whether a generic description in a security agreement covered specific collateral.

Orix argues in its brief that while the Fort Worth court did not squarely address the issue raised in this appeal, the court allowed the bank to recover the proceeds of inventory even though inventory was not listed in the security agreement. The security agreement used the phrase "personal property of any kind or character." Orix argues that the court implicitly held that this was sufficient to cover inventory. Even if this were true, it would not help Orix. That situation is like those already distinguished by this court wherein a generic description of tangible property was held sufficient to cover tangible property that was not specifically listed in the security agreement. Again, this appeal concerns an appellant seeking to have a description of tangible property cover intangible property.

**3.** Further, the court in *Parsons College* never disclosed the type of collateral sought by the creditor. Thus, the case is no authority for Orix's position.

■ We hold that as a matter of law, that the phrase "property ... wherever located" is insufficient to create a security interest in intangible property. Orix's second point of error is overruled.[4]

■ Orix argues in its third point of error that its security interest attached to Stephens' right to receive payment under the covenant not to compete because it is an account. Orix points to the fact that its security agreement specifically listed accounts and accounts receivable.

The Texas Business and Commerce Code defines accounts as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." TEX. BUS. & COM.CODE ANN. § 9.106 (Tex. UCC) (Vernon 1991). Orix contends that Stephens' right to receive payment under the covenant not to compete was partly in consideration for the sale of business stock and partly in consideration for refraining from competing, a service. We disagree.

The sale of the stock of W.T. Stephens Contracting, Inc. was accomplished in a separate transaction under a purchase agreement involving separate consideration. The covenant not to compete and the consideration for it were set out in a separate agreement. It is clear from reading the covenant not to compete that Stephens' right to receive payments for not competing was separate from the sale of the stock. The percentage of gross revenues assigned to him under that agreement were solely for his agreement not to compete, not for the stock. The sale of the stock was not part of the covenant. There were no "goods sold or leased;" therefore, this was not an "account."

The covenant not to compete in this case was "a promise by the seller of a business not to compete with the buyer in such a way as to injury the value of the business sold." RESTATEMENT (SECOND) OF CONTRACTS § 188 (1981). The initial question confronting this court is whether a promise to refrain from competing with another is a "service rendered."

The word "service" has a variety of meanings dependent upon the context, or the sense in which word is used. *Central Power & Light v. State,* 165 S.W.2d 920, 925 (Tex.Civ.App.—Austin 1942, writ ref'd), *cert. dismissed,* 319 U.S. 727, 63 S.Ct. 1033, 87 L.Ed. 1691 (1943) *(per curiam ).* When used in connection with the verb "rendered," the word "service" implies active performance. What we have in this case is a promise to refrain from performing. By making such a promise, Stephens was not conferring a value on BFI, as is implicated when a service is rendered. In the typical situation, the party rendering a service confers something of value upon the party receiving the service. Stephens conferred no separate value on BFI under the covenant, he simply promised that he would not compete, and he was compensated for five years' or until he broke his promise.

■ The commentary under § 9.106 supports this interpretation. In explaining the term "general intangibles," the commentary states that this term was designed to encompass miscellaneous types of contractual rights. TEX.BUS. & COM.CODE ANN. § 9.106 cmt. (Tex. UCC) (Vernon 1991). As to the term accounts, the commentary states that it was designed to cover the ordinary commercial accounts receivable. The commentary further states that in some circumstances the right to receive money not yet earned is a general intangible rather than an account because the right to payment is not "for goods sold or services rendered." *Id.* That is precisely the situation presented in this case: a right to receive payment that is not for goods sold or services rendered.

We hold as a matter of law that the right to receive payment under a covenant not to compete is not a "service rendered," and is therefore, not an account under § 9.106. We hold that such a right to payment is a

---

4. Orix also cites an unreported decision in support of its argument that the description "all ·personal property" is sufficient. We remind

Orix that the Texas Rules of Appellate procedure prohibit counsel or the court from citing unpublished opinions as authority. TEX.R.APP.P. 90(i).

general intangible.[5] Orix's third point of error is overruled.

In its fourth point of error, Orix contends that the trial court erred in granting Omnibank's motion for summary judgment and denying Orix's motion for summary judgment because the affidavit of W.T. Stephens, attached to Omnibank's motion for summary judgment, was inadmissible under the parol evidence rule.

■■■■■ Orix is correct in its contention that the description of the collateral in the security agreement is unambiguous. Therefore, parole evidence is not admissible to determine the intent of the parties. However, the question of whether the Stephens affidavit was improperly considered by the trial court is irrelevant in light of our holding. The security agreement alone shows that as a matter of law Orix did not have a security interest in the payments owed to Stephens under the BFI agreement. Thus, any consideration by the trial court of Stephens' affidavit, in which he claimed that he never intended to include his right to funds from the BFI agreement in the Orix security agreement, did not cause the rendition of an improper judgment. *See* Tex.R.App.P. 81(b). Omnibank was entitled to judgment as a matter of law without the affidavit. Orix's fourth point of error is overruled.

■■■■ In its fifth point of error, Orix argues that the court erred in granting Omnibank's motion for summary judgment and denying Orix's motion for summary judgment because Orix's security interest was entitled to priority under Tex.Bus. & Com.Code Ann. § 9.312(e)(1) (Tex. UCC) (Vernon 1991).

Under § 9.312(e)(1), conflicting security interests rank according to priority in time

of filing or perfection, and priority dates from the time a filing is first made covering the collateral. *Id.* In this case, we held that the description of the collateral in Orix's security agreement was insufficient to cover the right to receive payments under the covenant not to compete. Since the security agreement did not cover the collateral in question, who filed first is irrelevant because there are no conflicting security interests. Omnibank is the only creditor with a security interest in the payments owed to Stephens under BFI agreement. Further, because Orix never had a security interest in the collateral, Omnibank properly received the payments under its security agreement. There was no conversion by Omnibank. Orix's fifth point of error is overruled.

The summary judgment rendered in favor of Omnibank is affirmed.

DRAUGHN, Justice, dissenting.

I respectfully dissent. I find the majority opinion strains to overemphasize the legal significance of the term "wherever located." I cannot conceive of a more inclusive description of property defined as being of "every *kind* and *nature,* wherever located, *now* or *hereafter* belonging to the Mortgagor." (emphasis added). To me "every kind and nature" encompasses the universe for property inclusion, both tangible and intangible. And when it is coupled with possible future acquisition by the term "now or hereafter belonging," the all-encompassing description is complete. The term "wherever located" merely covers possible tangible property and does not, in my opinion, presume that all the security must have a physical form and be located in some physical space. Otherwise, why

---

5. Orix's actual argument under this point is that the collateral in dispute here is a "contract right" as that term was defined under the statute prior to the 1972 amendment. When the statute was amended, contract rights were subsumed into accounts, therefore, the collateral is an account. *See* Tex.Bus. & Com.Code Ann. § 9.106 official reason for change (Tex. UCC) (Vernon 1991). Orix is incorrect. The only difference between a contract right and an account was the timing of the performance. *Id.* A contract right was the right to payment for goods sold or leased or services rendered when the party had not yet earned the right through performance. *Id.* The term accounts covered the same collateral after the right was earned by performance. *Id.* Under both definitions, however, there still had to be goods sold or leased or services rendered. *As discussed,* none of those things occurred in this case. Therefore, the collateral was not an account or a contract right.

use the term "of every kind and nature?" It would be superfluous.

Clearly the term *"hereafter* belonging to Mortgagor" contained in the security agreement would extend it to after acquired property of whatever "kind and nature" to be received by the debtor Stephens. The amounts due under the BFI agreement are surely not so ephemeral as to exist somewhere outside the definition of "every kind and nature." I would find they are covered under the Orix security agreement, and since it is prior in filing to that of OmniBank, it prevails.

Accordingly, I would reverse and render, granting the summary judgment of Orix.